# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5457 | **DATE** | 12/23/2003 |
| **CASE TITLE** | In Re: EMERALD CASINO INC   02 B 22977   03 A 1929 | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐   Filed motion of [ use listing in "Motion" box above.]

(2)  ☐   Brief in support of motion due _____.

(3)  ☐   Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐   Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐   Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐   Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐   Trial[set for/re-set for] on _____ at _____.

(8)  ☐   [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐   This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■   [Other docket entry]   Pursuant to Memorandum Opinion and Order entered this day, the ruling of the bankruptcy court is affirmed.

(11)  ■   [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 24 2003 | |
| | Notified counsel by telephone. | | date docketed | 22 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/23/2003 | |
| | | U.S. DISTRICT COURT CLERK | date mailed notice | |
| JS | courtroom deputy's initials | 03 DEC 23 AM 11:50 | JS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: EMERALD CASINO, INC. F/K/A HP, INC.,<br>        Debtor. | ) ) ) ) ) | Case No. 03-CV05457<br>Honorable James F. Holderman |
| EMERALD CASINO, INC.,<br>        Plaintiff-Appellant,<br><br>     v.<br><br>THE ILLINOIS GAMING BOARD, ELZIE HIGGINBOTTOM, VIOLET CLARK, GARY PETERLIN, and WILLIAM DUGAN, in their capacity as members of the Illinois Gaming Board, PHILLIP PARENTI in his capacity as an Administrator of the Illinois Gaming Board, MARK OSTROWSKI, JEANNETTE TAMAYO, and MICHAEL FRIES in their capacity as members of the Illinois Gaming Board staff, ROBERT SHAPIRO, and HERBERT HOLZMAN in his capacity as an Administrative Law Judge,<br>        Defendants-Appellees | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | On appeal from the United States Bankruptcy Court for the Northern District of Illinois – Chapter 11<br><br>Case No. 02 B 22977<br>Adversary No. 03 A 01929<br>Honorable Eugene R. Wedoff |

DOCKETED
DEC 2 4 2003

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

     This is an appeal from an interlocutory order of the Bankruptcy Court of the Northern

District of Illinois. On July 24, 2003, the bankruptcy court denied a motion for preliminary

injunction filed by debtor, Emerald Casino, Inc. ("Emerald"). This motion sought to enjoin the

Illinois Gaming Board ("IGB"), its members, certain of its staff, and an administrative law

1

judge[1] – all in their official capacities – from acting to revoke Emerald's state issued license to operate a casino. On July 30, 2003, appellant Emerald filed a notice of appeal with this court seeking review of the bankruptcy court's July 24th order.[2] On October 16, 2003, appellant Emerald and appellee IGB filed a joint motion requesting this court either to stay these proceedings regarding this appeal, or to dismiss them without prejudice so that the parties could work toward settlement. The motion to stay the proceedings was granted. On November 20, 2003, this court granted the Village of Rosemont's ("Rosemont") motion to intervene as an appellant, which resulted in appellant Rosemont pressing this appeal that had previously been stayed by the mutual agreement between Emerald and the IGB. The principal question raised by this appeal is whether the exception in 11 U.S.C. § 362(b)(4) allows the IGB to continue its license-revocation proceeding. For the following reasons, the decision of the bankruptcy court is affirmed.

_____

[1]The bankruptcy court dismissed the ALJ from the proceedings (Appellant's Ex. E at 20), and Emerald has not appealed that ruling.

[2]As a preliminary point, the State argues that Emerald has not yet received leave from this court to appeal the bankruptcy court's ruling because this court's August 7, 2003 order setting a briefing schedule only addressed leave to appeal, and not the merits of the appeal. The State briefed the merits of this appeal in response to Emerald's briefing of the merits. The State has claimed no prejudice from whatever ambiguity may have been present in the August 7, 2003 order.

This court has jurisdiction to hear appeals of interlocutory orders from the bankruptcy court. 28 U.S.C. 158(a)(3). This appeal is ripe for decision. It presents a controlling question of law as to which there is substantial difference of opinion, and a decision would materially advance the ultimate termination of the litigation. In re United Homes of Michigan, 2002 WL 126518, *1 (N.D. Ill. Jan. 30, 2002). Thus, this court will address this appeal on its merits.

In 1992, the IGB issued a license to Emerald, allowing it to operate a riverboat casino near East Dubuque, Illinois. The license had an initial term of three years and was renewable by the IGB on an annual basis. The IGB renewed Emerald's license in 1995 and 1996, but declined to renew the license in 1997. The IGB's decision not to renew the license did not terminate Emerald's license. The procedure under Illinois law allowed Emerald to contest the decision not to renew in a proceeding before an administrative law judge ("ALJ") appointed by the IGB. The ruling of the ALJ would be subject to de novo review and a final order by the IGB. The IGB's decision reviewing the ALJ would itself be subject to judicial review.

Thus, Emerald retained its status as a licensee and operator of a casino while it availed itself of the review process. Nevertheless, shortly after the decision not to renew in 1997, Emerald ceased its operations in East Dubuque because of competitive pressures from other casinos. Emerald has not operated a casino since then, but it continued to pursue review of the IGB's decision not to renew its license.

In May of 1999, the ALJ issued a ruling upholding the IGB's 1997 decision not to renew Emerald's license. Shortly thereafter, before any action could be taken on the ALJ's decision, the Illinois General Assembly passed an amendment to the Illinois Riverboat Gambling Act ("Act"), 230 ILCS 10. This amendment allowed Emerald (so long as it met certain requirements not relevant here) to apply to the IGB for renewal and approval of relocation to a new home dock location.

In August and September of 1999, Emerald applied to the IGB, pursuant to section 11.2 of

---

[3]These facts are taken from the bankruptcy court's July 24, 2003 order. (Appellant's Ex. E.)

the Act, for renewal of its license and approval to relocate from East Dubuque to Rosemont, Illinois. The IGB considered this new application on its merits and ruled that the administrative review proceedings regarding the decision not to renew in 1997 were moot. In January of 2001, the IGB denied Emerald's 1999 application and authorized issuance of a disciplinary complaint against Emerald to revoke its license.

On March 6, 2001, the IGB issued a formal decision denying Emerald's 1999 application for renewal and relocation. At the same time, the IGB also issued the previously authorized complaint for revocation of Emerald's license, commencing a license-revocation proceeding. It is this administrative license-revocation proceeding that Emerald asked the bankruptcy court to enjoin.

The complaint contained five counts, each of which alleged that Emerald failed to maintain suitability as a licensee. Count 1 alleged various instances of either failing to provide, or providing false, information. This count of the complaint specifically references testimony of two major shareholders or controlling persons of Emerald – Donald and Kevin Flynn. Count 2 alleged failure to disclose agreements relating to the proposed relocation of Emerald to Rosemont and failure to disclose agreements relating to the construction of casino-related facilities in Rosemont. Counts 3 and 4 alleged that Emerald failed to disclose transfers of ownership in Emerald involving Donald Flynn. Count 5, inter alia, alleged that Emerald engaged in conduct discrediting the Illinois gaming industry, including agreeing to sell shares of its stock to, and allowing construction work in Rosemont to be performed by, individuals associated with organized crime.

Emerald promptly answered the complaint and initiated administrative review of the IGB's decision. However, before any ruling on the complaint occurred, two significant events took place. First, by September of 2002, bankruptcy proceedings involving Emerald had commenced under

4

Chapter 11 of the Bankruptcy Code. Second, before any orders from relief issued from the bankruptcy court, a settlement agreement was negotiated among Emerald, the IGB, Donald Flynn, and Kevin Flynn. This agreement was effective as of August 19, 2002. Among the principal aspects of this agreement were: (1) that the parties would seek a stay of the administrative proceedings regarding the IGB's decision to revoke Emerald's license; (2) Emerald would cease all business activities not contemplated by the agreement; (3) Emerald's business would be sold to a new purchaser, subject to the IGB's approval; (4) Donald and Kevin Flynn would have no further involvement in any activity regulated by the IGB; (5) certain minority and female investors would be allowed to participate in the purchase of Emerald's business; and (6) the sales process would be open to all prospective purchasers. The seventh aspect of the agreement regulated how the proceeds of the sale would be distributed. Emerald's investors were allowed to recover their investments, but not allowed to profit from the sale. Generally, creditors were to be repaid, but Rosemont's claim as a creditor would remain subject to litigation with the purchaser required to prosecute objections to this claim, employing counsel approved by the IGB. Finally, the State of Illinois was to recover any excess. The parties anticipated that the State would likely gain several hundred million dollars. The agreement also provided that it would be void at the option of the IGB, and that the revocations proceedings would continue, if an order for relief is entered in the bankruptcy case and the bankruptcy court does not approve within 120 days after the effective date a plan of reorganization embodying the terms of the agreement. The 120-day period for approval of a plan of reorganization terminated on December 17, 2002, with no plan having been proposed by Emerald.

At a meeting on January 21, 2003, or some time after the meeting, the IGB determined to reinstate the administrative proceedings revoking Emerald's license. The ALJ ruled that the hearing

5

would continue on June 2, 2003, unless ordered otherwise by the bankruptcy court. Thereafter, Emerald continued to work toward developing a settlement plan acceptable to the IGB. On May 20, 2003, Emerald filed a plan that received the unanimous support of the members of the IGB. However, the IGB cannot agree to settle without the consent of the Attorney General of Illinois. The August 2002 settlement was approved by the Illinois Attorney General, at the time Jim Ryan. Lisa Madigan, the current Illinois Attorney General withheld approval of the May 20 plan. As a result of the failure to approve the May 20 plan, the IGB was prepared to recommence the administrative hearing as scheduled on June 2, 2003.

In response, Emerald filed a motion, noticed for May 29, 2003, in the bankruptcy court seeking preliminary injunctive relief against recommencement of the administrative proceeding aimed at revoking Emerald's license. A hearing on this matter was conducted on May 29, 2003 and a ruling was postponed to allow the parties to negotiate. These discussions were not fruitful.

After the May 29 hearing, the Attorney General disclosed for the first time her determination that no reorganization plan would be approved that allowed a return of investment to shareholders accused of wrongdoing by the IGB, specifically Donald and Kevin Flynn. Furthermore, on May 31, 2003, the Illinois General Assembly passed another amendment to the Illinois Riverboat Gambling Act. This amendment, Senate Bill 2402, specifically recognizes an additional legislative intent underlying the Act – an intent to increase the amount of revenues available to the State. This amendment allowed either the IGB to reissue a revoked license to the highest bidder, or it allowed the State to operate a casino itself through a designated manager. Before this amendment, upon revocation, the State would only be allowed to recover an application fee of $25,000 - $50,000.

On July 24, 2003 the bankruptcy court denied Emerald's motion.

6

## PROCEDURAL HISTORY

As a preliminary matter, the bankruptcy court ruled that the doctrine laid out by the Supreme Court in Ex Parte Young, 209 U.S. 123 (1908), overcame the IGB's assertion of sovereign immunity under the Eleventh Amendment because Emerald was seeking an injunction based upon a violation of federal law. Emerald argued to the bankruptcy court that an injunction was appropriate because the IGB would violate the automatic stay provision of the Bankruptcy Code, 11 U.S.C. 362(a), by recommencing its license-revocation proceedings. This provision prohibits the "commencement or continuation . . . of [any] judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). It also forbids "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The bankruptcy court held that the IGB was not violating this provision because it was acting pursuant to section 362(b)(4) of the Bankruptcy Code, which lifted the automatic stay with respect to a "proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power." 11 U.S.C. § 362(b)(4). The bankruptcy court recognized that if the State was advancing an impermissible pecuniary interest and not a police power or regulatory interest, then the exception would not apply. The court found that the IGB's decision to continue with license-revocation proceedings was not motivated by a pecuniary interest. (Appellant's Ex. E at 31.) The court further distinguished the cases cited by Emerald for the proposition that a pecuniary interest bars use of section 362(b)(4), on the basis that the action of the State in those cases – collecting a debt either for itself or a third party – clearly constituted a pecuniary purpose. No injunction was issued.

7

## STANDARD OF REVIEW

The bankruptcy court's legal conclusions are reviewed de novo, and its factual findings are reviewed for clear error. See Hoseman v. Weinschneider, 322 F.3d 468, 473 (7th Cir. 2003). The decision whether to grant a preliminary injunction is reviewed under the abuse of discretion standard. Vencor, Inc. v. Webb, 33 F.3d 840, 844 (7th Cir. 1994) (citing Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992)). "A court abuses its discretion when it commits a clear error of fact or an error of law." Id. (quoting Abbott Laboratories 971 F.2d at 13). "Absent any such error, the [bankruptcy] court's ultimate weighing of all . . . factors is entitled to great deference; while our review is more searching than an examination of whether the [bankruptcy] court weighed those factors irrationally or fancifully, we may not substitute our judgment for that of the [bankruptcy] court." Id. (quoting Abbott Laboratories, 971 F.2d at 13). .

## ANALYSIS

Emerald presents three issues for review regarding the bankruptcy court's denial of its request for a preliminary injunction: (1) whether the bankruptcy court erred by failing to enforce the automatic stay of litigation required by federal bankruptcy law under 11 U.S.C. § 362(a); (2) whether the bankruptcy court erred by failing to hold that the Attorney General has no authority to interfere with the IGB; and (3) whether the bankruptcy court erred by failing to enter an injunction under section 105 of the Bankruptcy Code, 11 U.S.C. § 105.

I.      Police or Regulatory Exception to the Automatic Stay

Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition automatically acts to stay most proceedings against the debtor so that the bankruptcy court can resolve the claims against the debtor in a systematic fashion. See In re Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982). One proceeding not

8

stayed, however, is that of a governmental unit enforcing its police or regulatory power. 11 U.S.C. § 362(b)(4). Section 362(b)(4) provides that the filing of a bankruptcy petition does not stay:

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power

11 U.S.C. § 362(b)(4). The bankruptcy court ruled that the proceeding in this case fell within the ambit of section 362(b)(4) and, therefore, was excepted from the automatic stay. This court agrees. As the bankruptcy court found, the IGB is a five-member administrative agency of the state of Illinois that is charged with regulating casino gambling in Illinois. (Appellant's Ex E. at 5.) The court also found that the proceeding Emerald wishes to enjoin was commenced in March of 2001, pursuant to a five-count complaint against Emerald, alleging various infractions of failing to disclose material information to the IGB, and that Emerald generally engaged in activity tending to discredit the gaming industry, including agreeing to sell shares of its stocks to, and to allow construction work to be performed by, individuals associated with organized crime. (Id. at 9.) Thus, this proceeding seeks to revoke a license from persons unsuitable to operate a casino and to punish those persons for their misconduct in the course of holding the license. Emerald presents a number of arguments, which it claims render the police and regulatory exception inapplicable. These arguments are unavailing.

### A. The State Proceeding Serves a Regulatory and Police Function

First, this court disagrees with a fundamental premise underlying Emerald's entire argument that the section 362(b)(4) exception does not apply – that the State's proceeding serves no regulatory

9

need because the May 20 plan proposed by Emerald (but never accepted by the State)[4] resolves any regulatory concerns the State may have. This position – that its May 20 plan satisfies the State's regulatory needs – recognizes the legitimate regulatory needs underlying the challenged proceeding. Furthermore, the presentation of the May 20 plan does not obviate the State's regulatory and police interest in the proceedings because, as the bankruptcy court stated, "[i]t's not up to the debtor to say that a particular settlement ought to be deemed by the State to satisfy its regulatory interests, and, therefore, no further regulatory concern ought to be considered." (Appellant's Ex. E at 35.)

Emerald also argues that deterring future applicants from misconduct in relation to a casino license is not a legitimate regulatory interest. It does not appear to this court that the bankruptcy court rested its decision to allow the State to proceed solely on the grounds that it would deter future applicants, and not on the grounds that revoking the license punishes Emerald itself and removes a license from the hands of those unfit to hold it. Emerald tries to argue that deterrence of others could be the only legitimate reason to punish it because the May 20 settlement which Emerald proposed included the agreement that those accused of wrongdoing would not receive any profit from resale of the casino license and would never be involved in casino operations again. As stated, this court will not accept the argument that Emerald's proposed settlement obviates the State's regulatory and police concerns. The bankruptcy court explained in detail the basis of the State's license-revocation proceeding – Emerald's misconduct – and explained that the State's position that section 362(b)(4) allows an action to impose deterrent penalties was consistent with the law. (Appellant's Ex. E at 29.)

---

[4]Emerald relies heavily on the argument that the IGB would accept its May 20 plan absent the Attorney General of Illinois's refusal to approve the plan. However, it is undisputed that the IGB will not approve the May 20 plan without the approval of the Attorney General. (Appellant's Ex. E at 37.) Thus, the State has not accepted the plan.

Punishment of Emerald for its misconduct clearly falls within the ambit of section 362(b)(4). See Alpern v. Lieb, 11 F.3d 689 (7th Cir. 1993) (holding that section 362(b)(4) excepts an action to enforce Rule 11 sanctions).

Finally, even if this court accepted Emerald's contention that the State's sole regulatory concern was the deterrence of others, this court would rule that this "general deterrence" is a proper exercise of police and regulatory power under section 362(b)(4). In support of its argument that general deterrence is not a police or regulatory interest under section 362(b)(4), Emerald cites to In re Ellis, 66 B.R. 821, 826 (N.D. Ill. 1986). However, the language to which Emerald cites is dicta because the court's decision not to except the government action rested on the fact that the State was trying to recover payments (or taxes or fees) outside the bankruptcy process – the type of government action that has been held to fall outside the ambit of section 362(b)(4). Furthermore, the dicta of In re Ellis, as explained below, is contrary to the holding of many courts that have applied section 362(b)(4) in situations where the government proceeding did not "stop or prevent" fraud or a violation of the law. See In re Commerce Oil Co., 847 F.2d 291, 295 (6th Cir. 1988) ("Punishing wrongdoers [and] deterring illegal activity . . . are exercises of the state's regulatory power."). Finally, this court does not believe that the Seventh Circuit's holding in Alpern, which applied section 362(b)(4) to a Rule 11 sanction, should be read to endorse only specific deterrence of an individual and not general deterrence as well.

This court rejects Emerald's contention that section 362(b)(4) only applies to "prevent or stop" a fraud . Emerald raises this argument to support its contention regarding general deterrence and to argue that government action can never proceed against a business that is not currently operating. According to Emerald, the purported rule that section 362(b)(4) only applies to "prevent

11

or stop" misconduct, in conjunction with the fact that Emerald is not currently operating a casino, renders section 362(b)(4) inapplicable because any fraud or law breaking already occurred and, therefore, cannot be stopped or prevented. Courts, including the Seventh Circuit in Alpern, have allowed government action to proceed under section 362(b)(4) even though that action did not "prevent or stop" a violation or fraud. See In re Commonwealth Companies, Inc., 913 F.2d 518, 522 (8th Cir. 1990) (rejecting debtor's contention that the lack of business activity renders section 362(b)(4) inapplicable because statutory language does not limit its application to instances where there is an imminent and identifiable harm); see also In re Commonwealth Oil Refining Co., 805 F.2d 1175, 1184-86 (5th Cir. 1986) (same).

Finally, Emerald argues that this court should look to what Emerald contends are the State's "actual" reasons for continuing the license-revocation proceeding, and not its nominal reasons. In support, Emerald cites two Supreme Court Cases. See Perez v. Campbell, 402 U.S. 637, 652 (1971) (holding that the effect of a state law, not the purported purpose of the law, is dispositive for preemption analysis); FCC v. Next Wave Communications, Inc., 537 U.S. 293, 301 (2003) (holding that the FCC's license revocation for failure to make payments violated 11 U.S.C. § 525 and describing as "irrelevant" the issue of the FCC's "regulatory motive"). This court will not attempt to divine the State's "actual" reasons for continuing its regulatory action, and sees no justification in the cases cited by Emerald to do so. Even if this court were to find the State's actual reasons to be relevant, this court must defer to the factual findings made by the bankruptcy court. When it ruled that section 362(b)(4) applied, the bankruptcy court found that even though the State of Illinois could receive a pecuniary benefit from license-revocation proceedings, the IGB's action to continue license-revocation proceedings was not concerned with this pecuniary benefit. (Appellant's Ex. E

12

at 31.) This court will now turn to two specific arguments raised by Emerald in opposition to applying section 362(b)(4).

B.    Control of The Res

Emerald argues that section 362(b)(4) does not apply when a government agency is seeking to seize control over a pecuniary interest in the property of the debtor's estate. In support, Emerald cites to In re Cash Currency Exch., Inc., 762 F.2d 542, 554-55 (7th Cir. 1985). In that case, a number of currency exchanges that had been placed under administrative receiverships pursuant to Illinois law filed bankruptcy and asked the bankruptcy court to order the State to turn over the exchanges' property to the bankruptcy trustee. Id. at 544. The State argued, inter alia, that its action to liquidate the currency exchanges through the administrative receivership was excepted from the automatic stay provision by section 362(b)(4). In rejecting this claim, the Seventh Circuit cited to Missouri v. United States Bankruptcy Court, 647 F.2d 768 (8th Cir. 1981), for the proposition that section 362(b)(4) excepts laws regulating "health, welfare, morals and safety but not . . . regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court." In re Cash Currency Exch., Inc., 762 F.2d at 555 (quoting Missouri v. United States Bankruptcy Court, 647 F.2d at 776.) Emerald argues that this case and its progeny render section 362(b)(4) inapplicable because it is undisputed that the State's proceeding in ths case would result in the revocation of Emerald's sole asset of significant value, its license. This court disagrees.

First, Emerald's reliance on In re Cash Currency Exch., Inc. is misplaced because in this case, the IGB has a valid regulatory interest. The court in In re Cash Currency Exch. Inc. based its ruling that section 362(b)(4) did not apply on the combination of two factors:

So too the [state proceeding is] designed to protect the rights of creditors. And, the

13

> [proceeding], by vesting control of the debtors' property in the receiver, "directly conflict[s] with the control of the property by the bankruptcy court." We hold that the state proceedings at issue here do not fall within the ambit of the section 362(b)(4) exception

Id. Thus, the court found that the State's interest was to protect the rights of other creditors, an interest that is not regulatory within the meaning of section 362(b)(4). This finding is consistent with the courts that have held section 362(b)(4) inapplicable when the government proceeding was designed to advance a pecuniary interest. Therefore, the state could not take control of the property when it did not have a valid regulatory interest.

Second, Emerald's argument based upon the holding of In re Cash Currency Exch., Inc. that section 362(b)(4) does not apply to actions conflicting with the bankruptcy court's control of the res is now precluded by changes in the Bankruptcy Code, which became effective in 1998. Before 1998, section 362(b)(4) only acted to except actions stayed by 362(a)(1), which stayed "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. 362(a)(1). In1998, however, section 362(b)(4) was amended by, inter alia, "expanding the scope of its exception to cover proceedings 'to obtain possession of property of the estate . . . or to exercise control over property of the estate' otherwise stayed by 11 U.S.C. § 362(a)(3)." SEC v. Brennan, 230 F.3d 65, 74 (2d Cir. 2000) (quoting 11 U.S.C. § 362(a)(3)). Thus, the current statutory language expressly contemplates allowing government regulatory and police action to "obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3); see In re Chapman, 264 B.R. 565, 571 (B.A.P. 9th Cir.) (holding that the 1998 amendments to section 362(b)(4) allowed the government to take possession of debtor's property through a civil forfeiture judgment).

C.    Pecuniary Interest Test

Emerald also argues that the State's proceeding should be stayed because the State's conduct

fails the so called pecuniary interest test – a test the Seventh Circuit has neither adopted nor defined.

The language of the pecuniary interest test "has its origin in 'the isolated remarks of a congressman

and a senator during floor debates' on the Bankruptcy Reform Act." In re Commonwealth Co., 913

F.2d at 524 (quoting In re Mansfield Tire & Rubber Co., 660 F.2d 1108, 112 (6th Cir. 1981)). These

remarks suggested a limitation on section 362(b)(4):

> This section is intended to be given a narrow construction in order to permit
> governmental units to pursue actions to protect the public health and safety and not
> apply to actions by a governmental unit to protect a pecuniary interest in property of
> the debtor or property of the estate.

Id. (quoting 124 Cong.Rec. H11089, reprinted in 1978 U.S. Code Cong & Admin. News 6436, 6444-

45 (statement of Rep. Edwards)). This test has been utilized by courts in this district to determine

whether section 362(b)(4) applies. "While it is somewhat 'elusive,' courts applying the pecuniary

purpose test 'must look to what specific acts the government wishes to carry out and determine if

such execution would result in an economic advantage over third parties in relation to the debtor's

estate.'" In re Ellis, 66 B.R. 821, 825 (N.D. Ill. 1986) (quoting In re Charter First Mortgage, Inc.,

42 B.R. 380, 382 (Bankr. D. Or. 1984)). "Generally, these courts hold that '[i]f the focus of the

police power is directed at the debtor's financial obligations rather than the state's health and safety

concerns, the automatic stay is inapplicable.'" Id. (quoting In re Sampson, 17 B.R. 528, 530 (Bankr.

D. Ct. 1981)).

In arguing that the State proceeding fails the pecuniary interest test, Emerald asserts that the

State is seeking an advantage over third parties in relation to the debtor's estate because, based on

the May 30 legislation, the State now stands to gain a substantial pecuniary benefit from revoking Emerald's license.

The IGB is vested with the power to regulate casino licenses in the State of Illinois, including the power to deny renewal of the licenses and commence revocation proceedings. It is clear that the IGB's basis for revoking the license – Emerald's misconduct – is regulatory and not pecuniary. The complaint filed by the IGB (Appellant's Ex. E at 8-10) clearly charges Emerald with misconduct. Cf. In re William Tell II, 38 B.R. 327, 330 (N.D. Ill. 1983) (holding that state license-revocation proceeding failed the pecuniary interest test because the reason for the revocation was failure to pay taxes). The State's actions do not fall outside section 362(b)(4) simply because the State might obtain a pecuniary benefit from the proceeding. See Alpern, 11 F.3d at 690 ("The fact that the sanction is entirely pecuniary does not take it out of section 362(b)(4).") (citation omitted). This fact is quite significant because whenever a state levies a pecuniary sanction against a debtor, a state will receive a pecuniary benefit. That benefit will inevitably be at the expense of the debtor's creditors because the sanction will reduce the debtor's assets. Therefore, the law is clear that an action does not fall outside of section 362(b)(4) simply because it will result in an economic advantage to a state at the expense of the debtor's creditors.

Because not all pecuniary benefits (and concomitant economic advantages in relation to third party creditors) received by a state render section 362(b)(4) inapplicable, it is significant, as the bankruptcy court explained, that the State in this case is not acting as a traditional creditor.[5] Emerald

_____

[5]Emerald argues that the bankruptcy court committed legal error by not applying the pecuniary interest test and, instead, resting its decision on the fact that the State was not a traditional creditor. This court disagrees with Emerald's characterization of the order. The bankruptcy court considered the fact that the State is not a traditional creditor as a factor, and used that factor to distinguish the cases where courts applying the pecuniary interest test ruled

16

owes it no debt. Thus, "the focus of the police power [in this case] is [not] directed at the debtor's financial obligations rather than the state's health and safety concerns." In re Ellis, 66 B.R. at 825 (quoting In re Sampson, 17 B.R. at 530).

As explained above, the pecuniary interest test has its roots in legislative history making clear that section 362(b)(4) should not allow a government unit to protect a pecuniary interest in the debtor's estate. This limitation is appropriate because federal bankruptcy law in general, and the automatic stay in particular, exist in part to centralize the process of distributing the debtor's estate among its creditors. In re Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982) ("The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors.") Therefore, a state as a creditor should not be able to circumvent the "systematic equitable liquidation procedure" provided for in the Bankruptcy Code by utilizing section 362(b)(4). By circumventing the bankruptcy process, a state would be "protecting" its pecuniary interest. A state would be, as Emerald describes it, engaging in an act that results in economic advantage over third parties in relation to the debtor's estate. The economic advantage a state would gain would be to have its claim paid without the risk that federal bankruptcy law's distribution procedure would leave the debtor unable to satisfy a debt owed to the state. The State in this case is not attempting to gain such an advantage. It is not attempting to satisfy a debt outside the bankruptcy process. It is not protecting a pecuniary interest that it fears will be whittled away through the bankruptcy process. Thus, the State is not engaging in the type of conduct that the pecuniary interest test exists to prohibit. This conclusion counsels against applying

section 362(b)(4) inapplicable. This analysis, especially in light of the fact that the Seventh Circuit has neither defined nor adopted a pecuniary interest test, was appropriate, and Emerald cites to no case holding otherwise.

that test to bar what is otherwise a regulatory action expressly approved by the Bankruptcy Code.

The State's conduct in this case will result in a dramatic depletion of the debtor's estate, but Congress has expressly provided for that result when the State – as it does in this case – exercises its regulatory and police power. 11 U.S.C. 362(b)(4). Accordingly, the bankruptcy court was correct to rule that section 362(b)(4) excepted the State's proceeding, even though the proceeding would deplete the debtor's assets, when the State exercised its regulatory and police power and did not attempt to recover a debt outside the bankruptcy process.

Finally, to the extent it is appropriate for a court to look past the action to the reasons the state agency is bringing the action, the bankruptcy court made a factual finding that the IGB's decision to continue license-revocation proceedings was not motivated by the State's potential pecuniary benefit. (Appellant's Ex. E at 31.) This finding has not been challenged by Emerald as clearly erroneous, and is supported in the record, including the fact that Emerald instituted this action to enjoin the State from revoking its license before the Illinois General Assembly amended the Riverboat Gaming Act to allow the IGB to auction off a revoked license. Thus, to the extent Emerald argues that this court should be looking beyond the State's action to its reasons, the bankruptcy court has already determined that those reasons are regulatory and, therefore, within section 362(b)(4).

II.     The Attorney General and Section 105

Emerald argues that section 362(b)(4) is not met because it only excepts "an action by a governmental unit . . . to enforce such governmental unit's . . . police or regulatory power." 11 U.S.C. § 362(b)(4). Emerald does not argue that the IGB will not press the license-revocation proceeding. Thus, it is undisputed that the IGB will utilize its regulatory power to continue the

18

license-revocation proceedings. Emerald argues that the individual IGB members would rather not pursue the proceeding, and that their decision to continue with it is motivated by actions of the Attorney General of Illinois – actions that Emerald alleges are beyond the Attorney General's authority under the Illinois Constitution. This court sees no basis to justify interposing itself between the Illinois Attorney General and an agency of the State of Illinois. As the bankruptcy court found, and Emerald does not dispute, the IGB has chosen to enforce its regulatory power by continuing with license-revocation proceedings against Emerald. Therefore, it is a "governmental unit" enforcing its "police or regulatory power." 11 U.S.C. § 362(b)(4). For purposes of this appeal, the issue ends there.

Finally, Emerald requests an injunction under section 105 of the Bankruptcy Code. Under this section, a court has the power to enjoin proceedings that are excepted from the automatic stay. Browning v. Navarro, 743 F.2d 1069, 1084 (5th Cir. 1984). This court will not substitute its judgment for the considered judgment of the bankruptcy court, which declined to issue an injunction. Furthermore, this court would not find an injunction appropriate on the basis that license-revocation proceedings would result in the transfer of Emerald's license to the State, because in section 362(b)(4) Congress has expressly approved of this result. Finally, the bankruptcy court ruled that Eleventh Amendment immunity applied to Emerald's suit. (Appellant's Ex. E at 20-21.) Emerald does not contest this ruling. Therefore, because this court has affirmed the bankruptcy court's ruling that the automatic stay is not violated by the license-revocation proceeding, no basis under Ex Parte Young exists to enjoin the state officers.

## CONCLUSION

For the foregoing reasons, the ruling of the bankruptcy court is affirmed.


ENTER:

_James F. Holderman_
JAMES F. HOLDERMAN
United States District Judge

DATE: December 23, 2003